St. Louis, Iron Mountain & Southern Railway Company

*v.* Whitacre.

Opinion delivered April 29, 1912.

Carrier—when relation exists.—The relation of carrier and passenger exists where a person rides upon a local freight train with the conductor's consent without paying fare.

Appeal from Franklin Circuit Court; Ozark District; *Jeptha H. Evans*, Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee sued appellant for damages alleging that he was injured while riding upon one of the appellant's local freight trains, and that his injuries resulted from the negligent handling of certain cars and a locomotive which were permitted to strike with unusual force the caboose in which appellee was riding. The accident occured between Benton and Argenta, Arkansas. At the time appellee was accompanying two cars of cattle which were in the local freight train on which he was riding. Appellee, H. B. Whitacre, and R. L. Woodward had gone down into Grant County, Arkansas, for the purpose of buying cattle. Appellee found the cattle too high, and did not purchase any. Woodward bought two carloads of cattle and loaded them for shipment at Sheridan in Grant County, and consigned them to himself at Booneville, Arkansas. When they got on the train on which their cattle were being shipped, Woodward presented to the conductor his contract for the shipment of the cattle, and the conductor

told them that two persons could not ride on it.   However, he did permit them both to ride without extra charge from Sheridan to Benton, Arkansas.   When they arrived at Benton, Woodward went to the agent and told him that he thought that he was allowed passage for two persons under his contract of shipment.   The agent told him that, under the tariff in effect at that time, which had been issued in accordance with the order of a circuit court of the United States, he was only entitled to transportation under his contract for one person.   The two cars of cattle were placed in the train of the appellant *en route* from Benton to Argenta, Arkansas. On the way to Little Rock appellee was injured by an unusual and violent jar from another train of cars against the caboose in which he was riding.   The testimony for appellant tends to prove that he took his seat in the caboose of appellant's local freight train, and that he was not called on for any fare by the conductor.   Appellee testified that he would have paid fare if it had been demanded of him by the conductor. On cross examination he testified that Woodward owned the cattle, and was acting for him in everything connected with his transportation.   That, in regard to any passes or transportation that might be necessary, Woodward was acting for him, and he was prepared to pay his fare if it had been demanded of him.

For appellant, B. W. Newbill, its agent at Benton, testified that both appellee and Woodward came to him, and he explained to them that he could not change their contract of shipment; that the cattle were consigned to one man, and that only one man could accompany the cars with that transportation.   The conductor of the local freight train on which appellee was injured said that the accident happened about six miles out of Benton; that there was no extraordinary, unusual or rough handling of the train, and that he did not pick up any tickets on the night in question.   He said that up to the time that the accident occurred there were no passengers on the train except appellee and Woodward.   He asked them if they were in charge of the stock, and the person addressed replied: "Yes."   The conductor then went on, and did not ask either of them for the payment of fares.

The court gave the following instructions:

"1.    If plaintiff was riding in the caboose of defendant's freight train with the knowledge and permission, expressed or implied, of defendant's servants and agents in charge of the train, then he was a passenger within the meaning of the law, and the same duty or care for his safety that it owes to passengers ordinarily so-called."

"5.    The burden is on the plaintiff to show by a greater weight of the evidence that he was injured by the negligence of the defendant as charged in the complaint at a time when plaintiff occupied the relation of passenger to the defendant. The burden is on the defendant to show by the greater weight of the evidence that the plaintiff was wanting in ordinary care for his own safety unless that is shown by the plaintiff's own proof."

There was a verdict for the appellee, and the case is here on appeal.

*Lovick P. Miles,* for appellant.

The court erred in giving instructions 4, 5 and 6.    60 Ark. 360.    Appellee was not a passsenger. 76 Ark. 491; 50 *Id.* 545; 96 *Id.* 206

*Sam R. Chew,* for appellee.

1.    Considering the instructions as a whole, there is no error.    Appellee was a passenger.    2 Hutch. on Car. (3 ed.) § 997; 67 Ark. 47.

2.    The instructions requested by appellant were properly refused.    It affirmatively appeared that appellee was ready, willing and able to pay fare, if asked.    8 Ark. 183; 14 *Id.* 530; 16 *Id.* 628; 21 *Id.* 69; 26 *Id.* 513; 42 *Id.* 57; 52 *Id.* 120; 63 *Id.* 177; 77 *Id.* 567; 75 *Id.* 251.    Every one on a train for the purpose of carriage with the consent, express or implied, of the railroad company is a passenger.    67 Ark. 389; 97 *Id.* 137.

HART, J., (after stating the facts).    It is insisted by counsel for the appellant that the court erred in refusing to give instruction No. 4 asked by him.    The instruction is as follows:

"If you find that Woodward was acting for plaintiff in regard to all matters concerning his transportation and fare, and that Woodward was representing and acting in plaintiff's

stead, with full authority to act, and Woodward knew when he left Benton that Whitacre had no right to ride as a free passenger on the contract, but intended, nevertheless, to evade or aid Whitacre in evading the payment of the lawful fare, and, while so engaged, plaintiff was injured without any wilful and wanton act of the defendant, plaintiff can not recover."

The case of *Hobbs* v. *Texas & Pac. Ry. Co.*, 49 Ark. 360, relied on by counsel for appellant, has no application to the facts in this case. There the train in question was a through freight train. The court said that the facts adduced at the trial were sufficient to bring notice home to Hobbs that the train was not intended for his accommodation, and said: "Where there is a division of the freight and passenger business of a railroad, the presumption is that a person found on a freight train is not legally a passenger; and if he claims that he is, it devolves upon him to show a state of case that will rebut the presumption."

In the case before us appellee was riding on a local freight train of the appellant, and under the statutes of this State he was entitled to enter the same and be carried thereon as a passenger. Section 6705, Kirby's Digest. Appellee testified that if payment of fare had been demanded of him by the conductor he was ready and willing to pay his fare, and there is nothing in the record tending to dispute this testimony. It is true that the testimony shows that the appellee and Woodward went to the agent at Benton and insisted that he change the contract of shipment so that they would both be entitled to be carried on it without the payment of fare, and the agent told the appellee under the tariff then in force he could not do this. The conductor states that he asked one of them (he does not say which) if they were in charge of the cattle, and that one of them said: "Yes." The conductor then went on, and did not demand fare of either of them, and did not ask which one of them was in charge of the cattle. Appellee was on one of appellant's trains upon which passengers are allowed to ride, and had a right to be carried as a passenger. He made no attempt whatever to conceal himself from the conductor or to evade the payment of his fare. He was permitted to ride by the conductor without the pay-

ment of any fare being demanded of him. He himself did nothing by word or act to deceive the conductor in regard to the matter. Hence we think that the instruction asked by the appellant was abstract, and, there not being any testimony in the record on which to base it, it was properly refused by the court.

Mr. Hutchinson says: "It is universally agreed that the payment of the fare or price of the carriage is not necessary to give rise to the liability. The carrier may demand its prepayment, if he chooses to do so; but if he permits the passenger to take his seat or to enter his vehicle as a passenger without such requirements, the obligation to pay will stand for the actual payment for the purpose of giving effect to the contract with all of its obligations and duties. Taking his place in the carrier's conveyance with the intention of being carried creates an implied agreement upon the part of the passenger to pay when called upon, and puts him under a liability to the carrier, from which at once springs the reciprocal duty and responsibility of the carrier. 2 Hutchinson on Carriers, (3 ed.) § 1019, 997c; *St. Louis & S. F. Rd. Co.* v. *Kilpatrick,* 67 Ark. 47.

In the case of *Moore* v. *St. Louis, I. M. & S. Ry. Co.,* 67 Ark. 389, the court said:

"As a general rule, every one on a passenger train of a railroad company for the purpose of carriage with the consent, express or implied, of the company is presumptively a passenger."

Counsel for appellant complain also that the court erred in refusing instruction No. 5 asked by it.

This instruction is substantially the same as No. 4, and was properly refused for the reasons given in discussing that instruction.

Judgment affirmed.